IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 4:18-CR-90-ALM-KPJ |
| § | |
| EARNEST HENDERSON (1), § | |
| § | |
| Defendant. § | |
| § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Earnest Henderson's ("Defendant") Motion to Suppress (Dkt. 44), the matter having been referred to the undersigned by the Honorable Amos L. Mazzant, III (*see* Dkt. 45). The Government filed a Response in opposition to the Motion (Dkt. 55). On October 16, 2018, the Court held a hearing on the contested issues. *See* Dkt. 65. The Court has considered the record before it and the arguments and evidence presented at the hearing. As set forth below, the Court finds that the motion should be **DENIED**.

**BACKGROUND**

Defendant is charged in this matter with a violation of 21 U.S.C. § 846, conspiracy to possess with the intent to manufacture and distribute heroin, 21 U.S.C. § 846, conspiracy to possess with the intent to manufacture and distribute methamphetamine, and 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime.

Law enforcement officers from The Colony Police Department ("The Colony PD"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and Dallas County Sheriff's Department ("Dallas County") (collectively the "Law Enforcement Agencies") collaborated on an

investigation into drug distribution throughout Denton County, Texas.[1] The Colony PD conducted controlled drug buys from co-Defendants, Lisa Marie Nickerson ("Nickerson") and Ryan Teachout ("Teachout"). Teachout and Nickerson both identified to undercover officers their source of supply as "Pooh,"[2] and told them that Teachout resided with Pooh at the Studio 6 Hotel in Dallas, Texas ("Studio 6"). Subsequently, an arrest warrant for Teachout was obtained.

On February 8, 2018, the Law Enforcement Agencies effected an operation to execute the arrest warrant for Teachout. Officers stationed themselves in the parking lot of a neighboring hotel and along major routes of travel. All participating officers, including all officers who testified at the October 16, 2018, hearing, were briefed on the drug trafficking investigation and were aware of the outstanding warrant for Teachout. During surveillance, officers observed Teachout frequently entering and exiting two hotel rooms, located on the first and second floor, one above the other. Additionally, officers observed suspected drug activity from the two identified rooms. Later, Teachout exited one of the Studio 6 rooms and got into the passenger seat of a gold Lincoln Navigator (the "Navigator"). Shortly thereafter, Defendant exited the other Studio 6 room and got into the driver's seat of the Navigator. Officers observed the Navigator drive slowly away from the hotel, making periodic stops in the parking lot, before turning onto Stemmons Trail. ATF Special Agent Jeanette Williamson ("Williamson") followed Defendant in an undercover vehicle. On Stemmons Trail, Dallas County Officer David Guiselman ("Guiselman") observed Defendant as he drove northbound towards the intersection of Northwest Highway from a parking lot.[3]

---

[1] Special Agent Jeanette Williamson of the ATF, Dallas County Officer David Guiselman, and Officer Miles Outon of The Colony Police Department testified at the hearing. *See* Dkts. 65, 66. Additionally, the Government introduced a copy of the Texas Transportation Code, as it relates to the use of turn signals (Dkt. 66-1 at 1), and a map used by witnesses to describe the scene (Dkt. 66-2 at 1). Defendant introduced twenty-five photographs of drugs and guns found in Defendant's vehicle (Dkt. 66-3 at 1–5; Dkt. 66-4 at 1–5; Dkt. 66-5 at 1–5; Dkt. 66-6 at 1–11).
[2] During the investigation, officers learned that Defendant's nickname is "Pooh."
[3] Guiselman's testimony at the hearing was supported by dash-camera footage from his patrol vehicle, which was activated when Guiselman turned on his patrol car's flashing lights and continued throughout the length of the traffic stop. *See* Dkt. 66.

Guiselman observed Defendant approach the stop sign at Northwest Highway and stop in the left turn lane without using a turn signal. Guiselman pulled out of the parking lot behind Defendant. Defendant then applied his turn signal while at the complete stop. As he followed Defendant on Northwest Highway, Guiselman turned on his patrol car's flashing lights, and Defendant pulled the vehicle to the side of the road. Guiselman informed Defendant that he was stopped for failing to operate his turn signal one-hundred feet prior to the turn. Upon Guiselman's request for identification, Defendant admitted he did not have a driver's license on his person. Defendant also stated that he did not know the passenger (who was later confirmed to be Teachout).

Later, in response to Guiselman's request for consent to search the Navigator, Defendant agreed. Multiple bags were found, including a bag containing a black safe with a combination dial. In the backseat behind the passenger seat, officers found a small bag of marijuana, which Defendant admitted was his. Defendant was arrested and placed in a patrol vehicle with Officer Miles Outon ("Outon"). Defendant subsequently gave Outon consent to search the Navigator and the bags, disclosing the combination to the black safe. Inside the black safe, officers found methamphetamine, MDMA, ecstasy, heroin, scales, bags, four firearms, and other drugs and drug paraphernalia. *See* Dkt. 66-3; Dkt. 66-4; Dkt. 66-5; Dkt. 66-6.

Defendant seeks to suppress all tangible evidence seized by law enforcement and any testimony by law enforcement concerning the physical evidence obtained in the search; the arrest of Defendant and any testimony by law enforcement concerning Defendant's actions while in detention or under arrest; and all written and oral statements made by Defendant to any law enforcement officers. *See* Dkt. 44 at 2.

## ANALYSIS

The Court first addresses Defendant's challenge to the traffic stop. Defendant argues that because the dash-camera footage shows Defendant using his turn signal, Defendant's stop was improper. *See* Dkt. 44 at 3. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *U.S. v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003); *see Delaware v. Prouse*, 440 U.S. 648 (1979). The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. *See Knowles v. Iowa*, 525 U.S. 113, 117 (1998); *U.S. v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). To determine whether a seizure is reasonable, the Court considers (1) "whether the officer's action was justified at its inception," and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Brigham*, 382 F.3d at 506 (quoting *Terry*, 392 U.S. at 19–20).

When considering whether an officer's actions were justified at their inception, the Supreme Court has stated that the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *U.S. v. Arvivu*, 534 U.S. 266, 273 (2002) (quoting *Terry*, 392 U.S. at 30). The Supreme Court has specifically instructed that, when reviewing courts make reasonable suspicion determinations, they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* (quoting *U.S. v. Cortez*, 449 U.S. 411, 417-418 (1981)). The likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Arvivu*, 534 U.S. at 274.

The Fifth Circuit has applied the first prong of the *Terry* test to traffic stop situations. For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. *U.S. v. Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010). A reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the seizure. *Id.*; *see, e.g., U.S. v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002).

Defendant agrees that failure to use a turn signal when making a turn is a valid basis for a traffic stop. *See* Dkt. 44 at 3. However, Defendant alleges that because the dash-camera footage from Guiselman's patrol vehicle shows the Navigator's turn signal blinking, Guiselman had no lawful authority to conduct a traffic stop. *See id*. Defendant's allegations are unfounded. Guiselman testified that he had a good view of Stemmons Trail from a parking lot on the west side of the road and watched Defendant's vehicle approach before pulling out of the lot behind him. Guiselman stated that Defendant did not apply his turn signal before stopping at the stop sign. In addition, Agent Williamson testified that she followed Defendant's vehicle from Studio 6, driving a short distance behind in an unmarked vehicle. Williamson testified that she saw Defendant approach the stop sign and not activate his turn signal, which prompted her to say to her partner in the vehicle, "They already have him, he didn't use his blinker." Williamson believed Guiselman had probable cause to stop Defendant's vehicle because of Defendant's failure to use his turn signal continuously for at least the last one-hundred feet of movement before stopping, in violation of Texas Transportation Code, Section 545.105(b).

While the video from Guiselman's dash-camera showed Defendant's left turn signal flashing, Guiselman testified that the camera does not activate until the vehicle's flashing lights

are activated, and the video recording "backs up" to record the prior thirty seconds. *See* Dkt. 66. Guiselman testified that he did not activate his flashing lights until after his patrol vehicle was behind Defendant's vehicle. Therefore, the video did not capture Defendant's failure to signal, as testified to by Guiselman and Williamson. Suppression on the basis of an improper traffic stop should be denied.

Regardless of Defendant's traffic violation, the Law Enforcement Agencies had authority to stop Defendant's vehicle because they had reasonable suspicion that it contained the subject of an outstanding arrest warrant. Officers may stop vehicles to execute a warrant when the officer has reasonable suspicion that an individual in a vehicle is the subject of a felony arrest warrant. *See United States v. Summers*, 108 F. App'x 192, 193 (5th Cir. 1997); *see also United States v. O'Connor*, 658 F.2d 688, 691 (9th Cir. 1981) (finding that where law enforcement had an arrest warrant and reasonably believed the subject of the warrant was the passenger in a taxi cab the stop was valid). At the hearing, Defendant admitted that if the purpose of the stop was to effectuate Teachout's warrant, the stop would be proper. Outon and Williamson both testified that the purpose of the investigation and tail of the Navigator was to arrest Teachout. Guiselman testified that he was aware of the outstanding felony arrest warrant for Teachout, that Teachout was a passenger in the Navigator, and that Guiselman had been instructed to stop the Navigator. Guiselman testified that he stopped Defendant's vehicle at that particular time on the basis of *additional* probable cause, failure to properly signal a turn.

At the hearing, Defendant argued that even if the initial stop was proper to effectuate Teachout's arrest warrant, the continued detention of Defendant was improper as he was not the subject of a warrant. In the course of effectuating a stop, a police officer may examine the driver's license and registration and run a computer check to investigate whether the driver has any

6

outstanding warrants and if the vehicle is stolen. *Brigham*, 382 F.3d at 507–08. An officer may also ask about the purpose and itinerary of a driver's trip during the stop. *Id.* at 508. In fact, the Fifth Circuit, specifically considering the scope of such questioning, has rejected "any notion that a police officer's questioning, even on a subject unrelated to the purpose of a routine traffic stop, is itself a Fourth Amendment violation." *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993). When additional reasonable suspicion arises in the course of the stop, the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *Id.* at 507; *Grant*, 349 F.3d at 196.

In this case, Guiselman articulated that he developed new reasonable suspicion because (1) Defendant admitted to driving without a license, and (2) Guiselman smelled marijuana in the vehicle. State law requires drivers to carry their driver's license and proof of insurance. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 324 (2001) (citing TEX. TRANSP. CODE §§ 521.025, 601,053). Failure to possess, and produce to a police officer on demand, a driver's license is a criminal offense, punishable by a fine or jail time up to six months. TEX. TRANSP. CODE § 521.025. Defendant admitted to Guiselman that he did not have a license with him; therefore, Guiselman was entitled to investigate Defendant's identity and the purpose of the trip, and even questions unrelated to the purpose of the stop were not violations of Defendant's Fourth Amendment rights. *See Brigham*, 382 F.3d at 507–08; *Shabazz*, 993 F.2d at 436. Moreover, Guiselman testified that he developed reasonable suspicion about ongoing drug offenses because he smelled marijuana when Defendant rolled down the window. Guiselman developed reasonable suspicion of criminal activity on the basis of Defendant driving without a license and the smell of marijuana in the car and could, therefore, continue the investigation until the suspicion was dispelled or confirmed. *See Brigham*, 382 F.3d at 507; *Grant*, 349 F.3d at 196.

Finally, during Guiselman's investigation, Defendant consented to Guiselman to search the Navigator. "Consent to search operates as an exception to the Fourth Amendment's warrant requirement." *Caraway v. State*, 255 S.W.3d 302, 310 (Tex. App.—Eastland, 2008) (citing *Bustamonte*, 412 U.S. at 219). Defendant does not allege that his consent was not freely given. Guiselman asked Defendant for permission to search the Navigator and Defendant agreed. *See* Dkt. 44-1 at 1. After Defendant was arrested and mirandized by Outon, Defendant was placed in a patrol vehicle with Outon. Both Outon and Guiselman testified that Defendant admitted the safe and firearms were his. *See id.* Outon testified that Defendant gave him the combinations to open the safe and consented to the search of the bags and safe; drugs and firearms were found inside. *See* Dkt. 66-3; Dkt. 66-4; Dkt. 66-5; Dkt. 66-6. Because Defendant does not dispute that his consent to search was freely and voluntarily given, suppression is inappropriate.

The Court finds that law enforcement officers had probable cause to stop Defendant's vehicle both because of the outstanding arrest warrant for Teachout and because Defendant failed to properly signal his turn. Additionally, the Court finds that after the vehicle was stopped, Guiselman properly continued investigation into new reasonable suspicion because Defendant admitted to driving without a license and because of the smell of marijuana in the vehicle. During the course of Guiselman's investigation, Defendant gave free and voluntary consent to Guiselman to search the Navigator. After Defendant's arrest, Defendant gave free and voluntary consent to Outon to search the bags and safe contained in the Navigator. For these reasons, the Court recommends that Defendant's Motion to Suppress (Dkt. 44) be **DENIED** in its entirety.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 26th day of October, 2018.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE